### ELDRED v. FINK et al.

### YUNCK v. ELDRED et al.

(Court of Appeals of District of Columbia. Submitted January 13, 1922. Decided March 6, 1922.)

#### Nos. 1474, 1475.

1. Patents ⬥⟳90(5)—Specification in prior patent held constructive reduction to practice of counts in interference.

A specification in a prior patent issued to one of the parties in interference proceedings, describing a composite wire for incandescent electric lamps composed of a core of nickel steel and a copper sheath covered with a platinum coating, was a sufficient reduction to practice of the counts in interference covering a similar wire without the platinum coating, where the specification stated that the wire had been successfully used without the platinum coating in 60 per cent. of the experiments and expressly reserved the right to file an application covering such wire.

⬥⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. **Patents ⊙═90(5)—Necessity of further experiments which can be performed by those skilled in the art does not invalidate reduction to practice.**

A specification in an application for patent, which describes the counts in issue in subsequent interference proceedings, is not invalidated as a reduction to practice by the fact that further experiments were necessary to make the invention successful, where such experiments could have been conducted by those skilled in the art from the description in the specification.

Appeal from the Commissioner of Patents.

Interference proceeding between Byron E. Eldred, Colin G. Fink, and John A. Yunck. From a decision of the Commissioner of Patents, awarding priority to Fink, Eldred and Yunck separately appeal. Reversed, and priority awarded to Eldred.

A. Parker Smith, of New York City, for Yunck.

C. J. Sawyer, of New York City, for Eldred.

Hubert Howson, of Washington, D. C., and A. G. Davis, of Schenectady, N. Y., for Fink.

ROBB, Associate Justice. These are appeals from a Patent Office decision in interference proceedings involving a composite leading-in wire for incandescent electric lamps. The claims are ten in number, but the first and tenth, here reproduced, will be sufficiently illustrative:

"1. A composite low expansion wire comprising a core of nickel steel and an external copper sheath welded thereto, said wire as a whole having less expansion than platinum."

"10. The combination, with a gas-tight receptacle having a wall of vitreous material, of a composite leading-in wire sealed therein, said wire consisting of reinforced copper wire, said reinforcement consisting of a layer of low expansion nickel-iron alloy."

The Examiner of Interferences, after a painstaking review of the evidence, awarded priority of invention to Eldred. The Examiners in Chief and the Commissioner overruled this decision and awarded priority to Fink.

[1] Eldred contends, and this contention was sustained by the Examiner of Interferences, that application No. 656,987, filed October 26, 1911, upon which patent was issued December 30, 1913, constituted a constructive reduction to practice. If this contention is sound, Eldred is entitled to an award of priority. In that application Eldred was particularly concerned with a composite wire consisting of a nickel-steel core, a layer of copper and an outer covering of platinum, but in his specification he said:

"Nickel-steel containing about 38 per cent. of nickel answers the purpose very well." .

The size of the core is specified and also its coefficient of expansion, as well as the thickness of the copper layer and the platinum covering. In addition to this description of the above composite wire, the specification makes reference to the use of wire without the platinum covering, in these words:

"As additional evidence of the importance of having a coefficient of expansion lower than that of glass the fact may be mentioned that the composite

copper-nickel-steel core of the present wire has, without any coating platinum, been drawn into lamp wire and has afforded seals. With such a copper-clad ferrous alloy wire, the sealing-in operation is best carried on under nonoxidizing conditions, as, for example, in an atmosphere of nitrogen or other inert gas. Three lamps out of five have given perfect seals. Here the character of the seal depends, not upon any adhesion of the glass for the copper, as the surface of the latter metal oxidizes considerably in the process of sealing-in, but solely upon the strong contraction of the glass upon the wire. A glass lamp having sealed into it a leading-in wire comprising an alloy core of low, but nonuniform, expansion, and an expansion-correcting sheathing of welded-on copper, the wire as a whole having a lower expansion than the glass, is in itself novel, and the right to make such novel article the subject of separate application is expressly reserved. For the present purposes, however, a welded-on outer sheathing of platinum is desirable and preferable."

There was evidence that in October of 1910 a few experimental lamps were made according to the disclosure in this specification, and that 60 per cent. of them were good lamps. At the time the testimony was taken, wire made according to the specification of this patent was used in making a considerable number of lamps, almost all of which were perfect. We agree with the Examiner of Interferences that this application describes fully the structure of the wire, the principle involved, and gives the proportions and dimensions for at least one embodiment.

[2] As the Commissioner correctly says:

"That a certain amount of experimenting may be necessary in a certain class of inventions and that the necessity for such experimentation is no ground for holding a patent invalid is well settled."

This specification was addressed to those skilled in the art, to whom was left the mere mechanical experimentation incident to the commercial exploitation of the invention. In other words, any one skilled in the art, given this specification, would have had no difficulty in producing lamps.

For the reasons given more in detail by the Examiner of Interferences, we reverse the decision and award priority to Eldred.

Reversed, as to No. 1474.

Affirmed, as to No. 1475.

Mr. Justice HOEHLING, of the Supreme Court of the District of Columbia, sat in the place of Mr. Chief Justice SMYTH in the hearing and determination of this appeal.